**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT
WESTERN DIVISION**

| | | |
|---|---|---|
| IGOR STANKIC | / | CASE NO. _____ |
| 2702 Plum Brook Creek Drive. | / | |
| Sandusky, OH 44870, | / | JUDGE _____ |
| | / | |
| Plaintiff | / | |
| | / | |
| vs. | / | |
| | / | |
| CITY OF SANDUSKY, OHIO | / | |
| c/o Brenden Heil, Law Director | / | |
| 222 Meigs St. | / | |
| Sandusky, OH 44870 | / | |
| | / | |
| and | / | **COMPLAINT** |
| | / | |
| BRETT J. BIRD | / | [Jury Trial Endorsed Hereon] |
| c/o City of Sandusky Police Department | / | |
| 222 Meigs St. | / | |
| Sandusky, OH 44870 | / | |
| | / | |
| and | / | |
| | / | |
| DANNY J. LEWIS | / | |
| c/o City of Sandusky Police Department | / | |
| 222 Meigs St. | / | |
| Sandusky, OH 44870 | / | |
| | / | |
| and | / | |
| | / | |
| OHIO ATTORNEY GENERAL | / | |
| c/o Dave Yost, Attorney General | / | |
| 30 E. Broad St., 14th Floor | / | |
| Columbus, OH 43215, | / | |
| | / | |
| Defendants | / | |

Now comes Plaintiff Igor Stankic ("Stankic"), by and through his undersigned counsel,

and for his Complaint against Defendants City of Sandusky ("City"), Brett J. Bird ("Bird"),

Danny J. Lewis ("Lewis") and the Ohio Attorney General ("OAG") hereby avers as follows:

1.      Stankic is an individual residing in the City of Sandusky, Ohio.  Through this action, he brings claims for false arrest, vicarious liability, and violations of 42 U.S.C. §1983.  In addition, Stankic seeks a declaration that Chapter 2744 of the Ohio Revised Code is unconstitutional.

2.      Furthermore, Stankic is an immigrant from Serbia, who came to the United States in 1995, became a citizen in 2001, and created a trucking business which employs approximately one hundred (100) people.

3.      The City is a municipality located in Erie County, Ohio.

4.      Bird is a police officer employed by the City.

5.      Lewis is a police officer employed by the City.

6.      The OAG is made a party to these proceedings pursuant to R.C. §2721.12(A), as the constitutionality of certain Ohio statutes is being challenged.

7.      Pursuant to 28 U.S.C, §1331, this Court has subject matter jurisdiction over Stankic's claim that Defendants violated 42 U.S.C. §1983.  This Court has supplemental jurisdiction over Stankic's state-law claims pursuant to 28 U.S.C. §1367 as they. are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue in this Court is proper under 28 U.S.C. §1391(b) and (c).

9.      Stankic is the President of Stankic Holdings, Inc. (an Ohio corporation), which in turn is the sole member of Stankic Enterprises, LLC (an Ohio limited liability company), which owns 1722 Hayes Ave. in Sandusky, Ohio ("Hayes Ave. Property").

10.      The Hayes Ave. Property is a warehouse.  It is used by Stankic Enterprises as a shipping point for various customers who have their products delivered and stored there.

11.    On the morning of October 12, 2022, Stankic arrived at the Hayes Ave. Property at approximately 8:14 AM.

12.    Upon arriving, Stankic observed unauthorized vehicles parked at the Hayes Ave. Property, consisting of two (2) semi tractor-trailers and one (1) commercial pickup truck.

13.    Neither he nor any other authorized person been asked if these unknown vehicles could park at the property.  Neither he nor any other authorized person had given permission for anyone to park their vehicles on the property.

14.    One of the illegally parked semi-trucks was blocking a loading bay.

15.    Another of the trespassing trucks was blocking a driveway.

16.    Stankic also observed that the gate on the Campbell Street driveway was wide open because the chain and two (2) locks securing the gate had been cut off or burned through.

17.    Noticing there were several Norfolk Southern vehicles and employees nearby who were attending to a train which had derailed close to the Hayes Ave. Property, Stankic drove over and asked the employees if they knew who owed the trucks which were illegally parked on his property.

18.    The Norfolk Southern employees could not identify the owners of the trucks, so Stankic drove back to the Hayes Ave. Property.

19.    Upon his return, Stankic noticed the company name of "Hulcher" on the pickup truck.

20.    Since the Hulcher vehicles were criminally trespassing on his property and were blocking a loading bay and driveway, Stankic needed the illegally parked vehicles to be removed immediately.

21.     To that end, Stankic contacted the headquarters of the Hulcher company located in Dallas, Texas.  Stankic demanded Hulcher move their trucks immediately or he would have them impounded.

22.     During the brief conversation with Hulcher, the company representative with whom he spoke did not request Stankic not to have the trucks impounded and never informed him when or if a Hulcher employee would be on-site to move the trucks.

23.     Frustrated because the trespassing vehicles were blocking his business and not receiving any significant information about when the trucks would be removed from the Hayes Ave. Property, Stankic moved the truck which was blocking the loading bay into the warehouse. He was able to move the semi-tractor and trailer because the keys had been left in the vehicle and Stankic has the appropriate license to be able to operate such a vehicle.

24.     Later that morning, a representative from Hulcher (Eric Shiple) arrived and announced he was there to move the trucks.  He said Hulcher was instructed by "the railroad" to park the trucks on the Hayes Ave. Property

25.     Stankic reiterated that the trucks had to be moved immediately but that before they could move the trespassing truck blocking the loading dock which had been moved inside the warehouse, they would need to compensate Stankic.

26.     During the conversation, Stankic gave his business card to the Hulcher representative.

27.     The Hulcher representative left and evidently called the City's police department to request assistance.

28.     Stankic's business attorney happened to call at that time to speak with Stankic about an unrelated matter.

4

29.     While Stankic was speaking with the attorney, Lewis entered the warehouse without requesting permission to do so and without being invited into the building.  Bird followed Lewis shortly thereafter.

30.     It subsequently became obvious that when Bird and Lewis arrived at the scene they spoke to the Hulcher representative.  Stankic is unaware of what the Hulcher representative told Bird and Lewis, since this information was never communicated to Stankic.

31.     After Stankic informed his attorney the police had arrived and briefly explained the situation, the attorney said he would call right back with another member of the law firm.

32.     Stankic walked towards Bird and Lewis.

33.     When the parties were closer, Stankic greeted them.  Lewis asked Stankic what was going on.  Stankic was expecting to discuss the situation with Bird and Lewis and to explain what the Hulcher employees had done to the property and the clearly unlawful trespassing.

34.     Stankic then informed them that his attorney would be calling right back and asked that the officers wait for 30 seconds until that happened and then everything could be sorted out.  He was politely addressing the officers without any aggressive behavior whatsoever.

35.     At this point, Bird and Lewis were only a few feet in front of Stankic, who had not shown any aggressive or disrespectful behavior towards the officers.

36.     Neither Bird nor Lewis discussed with Stankic what had happened.  In fact, after the initial perfunctory "What's going on?" they did not give Stankic a chance to speak before assaulting him as described below.

37.     Bird then gave Lewis a knowing nod and look.

38.     Immediately thereafter, without any warning from, or request by, Bird or Lewis, and with absolutely no aggressive or disrespectful behavior by Stankic, the officers sprang into

5

action and aggressively attempted to put Stankic into handcuffs by grabbing and twisting his arms.

39.     Bewildered by this sudden assault, as there was no forewarning or instructions given by Bird or Lewis, or legitimate reason to place him into handcuffs, Stankic did not initially cooperate as his instinctive human "fight or flight" reflex took over.  Indeed, he was confused and frightened as to what these officers of the law were trying to do to him.

40.     Foregoing even a modicum of investigation, Bird and Lewis simply decided Stankic was guilty of a crime.  During the struggle, Bird told Stankic he was being arrested for "theft."

41.     As Bird and Lewis continued trying to manhandle Stankic, he repeatedly asked what they were doing and what was going on.  At no time did they instruct him to do anything or explain what was happening.

42.     Stankic continued to struggle.  Because of the suddenness of the unprovoked attack, he was in shock and fearful of what Bird and Lewis were doing and going to do.  Neither Bird nor Lewis had given him any instructions or requested Stankic to do anything before assaulting him.  Bird repeatedly screamed at Lewis to "just take him down."

43.     Stankic told Bird and Lewis to stop pushing him and then he would let them arrest him.  When the officers stopped, Stankic allowed the officers to place him in handcuffs without further incident.

44.     Owing to Stankic's injured shoulder, Bird and Lewis agreed to use two sets of handcuffs to allow Stankic more range of movement.

45.     Stankic repeatedly asked to contact his attorney, but Bird and Lewis refused to allow it.

6

46.     As Bird and Lewis walked Stankic to their cruiser, Stankic asked to call his employee so someone could come and take care of the building.  Lewis complied with this request and Stankic was able to contact one of his employees.

47.     However, Lewis continued to refuse Stankic the ability to call his attorney.

48.     Bird searched Stankic's pockets, finding no weapons or contraband.  Stankic stated he did not consent to the search, to which Bird retorted that Stankic's consent was not necessary because Stankic was under arrest.

49.     Stankic then asked Bird and Lewis if their body cameras were turned on and to name the charge for which he was being arrested.

50.     Both Bird and Lewis replied that their body cameras were on.  As for the charge for which he was being arrested, after Bird and Lewis stared at each other for a few moments, Lewis stated, "I guess it will be unauthorized use of a motor vehicle."

51.     Lewis then read Stankic his "Miranda" rights, and Stankic informed Bird and Lewis that he would not speak without his attorney being present.

52.     Stankic was placed inside of the cruiser.

53.     Stankic's attorney kept calling Stankic's phone.  Lewis answered the call (as he had possession of Stankic's phone) but nothing could be heard on the line.  After this happened again, Stankic requested that Lewis return the phone call and speak with his attorney.

54.     Lewis did call Stankic's attorney and spoke with him.

55.     Thereafter, Lewis asked Stankic if Hulcher could have their truck back.  Stankic replied positively, but refused to allow any Hulcher employee inside the building.  Instead, after being released from the handcuffs, Stankic drove the Hulcher semi-truck out of the building and

into the parking lot, where it was then driven off of the property (along with the other two vehicles) by Hulcher employees.

56.     In a supplement to the subsequent official report of the incident, Lewis falsely stated Stankic was subject to "investigative detention," rather than arrest.

57.     At no time did Bird or Lewis investigate the criminal trespass or criminal damaging perpetrated by Hulcher employees, or ask Stankic if he wished to file a complaint against the Hulcher employees.

58.     Furthermore, and again contradictory to the narrative of Lewis in his official report, there was never any agreement by Stankic to refrain from pressing charges against Hulcher and its employees for the destruction of property and trespass at the Hulcher Ave. Property.

59.     Coming from a war-torn area of the world, Stankic is aware of the abuse of power which can be perpetrated by persons in a position of authority. Nevertheless, Stankic has ever been a staunch supporter of the law enforcement community in the United States.

60.     However, the unlawful abuse he suffered by the actions of Bird and Lewis has forever tainted Stankic's feelings towards law enforcement in America.

61.     Moreover, ever since his assault by Bird and Lewis, Stankic is fearful of entering the city limits for fear of additional maltreatment. Except when absolutely necessary, he has refrained from traveling there.

**FIRST CAUSE OF ACTION**
[Violation of 42 U.S.C. §1983]

For his First Cause of Action, Stankic hereby restates each preceding paragraph as if fully rewritten herein and further states:

62.     42 U.S.C. §1983 states in part:

8

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

63.     Stankic was deprived of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

64.     Bird and Lewis, as police officers employed by the City, were acting under color of state law when they assaulted and falsely arrested Stankic.

65.     Moreover, Bird and Lewis were following an express or tacit policy or custom of the City, which was the moving force behind the deprivation of Stankic's civil rights.

66.     This policy or custom is evidenced by:  (1) an official policy or enactment; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; and/or (4) a custom of tolerance of federal rights violations.

67.     Bird and Lewis' behavior and conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.

68.     Bird and Lewis also acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

69.     Bird and Lewis are, therefore, liable pursuant to 42 U.S.C. §1983 for violating Stankic's rights.

### SECOND CAUSE OF ACTION
#### [FALSE ARREST]

For his Second Cause of Action, Stankic hereby restates each preceding paragraph as if fully rewritten herein and further states:

70.     Bird and Lewis, as police officers employed by the City, assaulted without provocation, arrested and intentionally detained Stankic.

71.     Bird and Lewis placed Stankic in handcuffs, read him his Miranda rights, told Stankic he was under arrest and was being arrested for "theft" and "unauthorized use," and placed Stankic in the rear seat of their official police vehicle.

72.     Based on the circumstances, Stankic reasonably believed his liberty was being restrained.

73.     Lewis' claim in his report that Stankic was placed in "investigative detention" is false and known to be false by Lewis.

74.     Prior to the assault and arrest, Bird and Lewis conducted almost no investigation as to whether, in fact, a crime had been committed by Stankic.

75.     Prior to the assault and arrest, Bird and Lewis had not established any probable cause for the arrest.

76.     Prior the assault and arrest, Stankic had not been disrespectful, belligerent, violent or acted in any fashion which would cause a person to be concerned about Stankic's mindset or that he would engage in aggressive behavior.

77.     Stankic engaged in no verbal or physical behavior prior to him being assaulted and arrested which would cause Bird and Lewis to be fearful of their safety.

78.     The actions of Bird and Lewis towards Stankic, including, but not limited to, their assault and arrest of Stankic were part of an express or tacit policy of the City.  Alternatively, Bird and Lewis acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

79.     Bird and Lewis, as police officers and agents and employees of the City, falsely arrested Stankic, and are liable to him for their unlawful actions.

## THIRD CAUSE OF ACTION
[RESPONDEAT SUPERIOR]

For his Third Cause of Action, Stankic hereby restates each preceding paragraph as if fully rewritten and further states:

80.     During all times relevant, Bird and Lewis were employed by the City as police officers.

81.     Therefore, when Bird and Lewis assaulted and falsely arrested Stankic, they were acting under color of state law, and as the employees and agents of the City.

82.     Furthermore, they were acting according to an express or tacit policy of the City.

83.     If Bird and Lewis are determined to have been acting within the course and scope of their employment as police officers of the City, then the City is vicariously liable for their unlawful actions according to the doctrine of respondeat superior.

## FOURTH CAUSE OF ACTION
[DECLARATORY JUDGMENT]

For his Fourth Cause of Action, Stankic hereby restates each preceding paragraph as if fully rewritten herein and further states:

84.     Article I, §16 of the Ohio Constitution states:

> All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

> Suits may be brought against the state, in such courts and in such manner, as may be provided by law.

85.     Thus, the plain words of the Ohio Constitution make it clear that the State (including political subdivisions thereof) is subject to suit without any conditions except that the legislature may designate the court and procedures which govern that claim.

86.     However, the Ohio General Assembly has attempted to restrict this constitutional right by enacting contrary and unlawful statutes such as R.C. §2744.01 et seq.

87.     These statutes, *inter alia*, purport to grant immunity to political subdivisions and their employees from suit except in certain limited circumstances.

88.     Notwithstanding the express language of the Ohio Constitution, some Ohio courts have erroneously held that the provision is **not** self-executing.

89.     This interpretation is clearly erroneous.  The provision does not mention limitations or immunities, nor does it contain any language which can be reasonably construed as requiring separate and additional legislation to create the right.

90.     The antiquated notion of *rex non potest peccare* ("The king can do no wrong.") was expressly repudiated Article I, §16, which was amended in 1912 to include the final sentence.  While the concept of sovereign immunity may have had some valid purpose and meaning under English Common Law, it has no application whatsoever in the American egalitarian judicial system and the absence of a monarch.

91.     In addition to the express language of the law, the intent and purpose of the amendment is clear from the Proceedings and Debates of the Constitutional Convention of the State of Ohio in 1912.

92.     During the Convention, the sole sponsor of the amendment, B.F. Weybrecht, repeatedly indicated that the provision, once adopted, would end sovereign immunity.  In describing the amendment, he stated that it "recognizes the right of the individual to seek redress for claims against the state in such courts as may hereafter be designated, without petitioning the legislature as is now the custom." 2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1912) 1431.

93.     Thus, even though the right was arguably extant beforehand, after the amendment to Article I, §16 was ratified in 1912, the unqualified right of citizens to bring suit against the State and its political subdivisions was expressly written into the Ohio Constitution.

94.     Unbelievably, while Ohio courts have looked to the Debates as an aid when interpreting other constitutional provisions, they have refused to accept the plain wording of this provision and the clearly stated intent behind its passage, essentially substituting a political policy instead of obeying the plain language of the Ohio Constitution.

95.     R.C. §22744.01 et seq. begins with the proposition that political subdivisions and their employees are immune from suit and then describes the limited situations where they would be liable for wrongs committed against a citizen.  As such, they plainly contradict Article I, §16 of the Ohio Constitution.

96.     Therefore, these statutes are unconstitutional on their face and must be declared to be so, correcting decades of erroneous jurisprudence.

WHEREFORE, Plaintiff Igor Stankic prays for judgment in his favor and against Defendants City of Sandusky, Brett Bird and Danny J. Lewis in an amount in excess of $25,000 in compensatory damages, punitive damages in an amount to be determined at trial, for a declaration that Chapter 2744 of the Revised Code is unconstitutional, and for his costs, attorney's fees, interest, and such other and further relief as this court deems proper

Respectfully submitted,
CORSARO & ASSOCIATES CO., LPA

By:  /s/  Steven B. Beranek
Steven B. Beranek, Esq. (#0066847)
28039 Clemens Rd.
Westlake, OH   44145
Ph: (440) 871-4022 Fax: (440) 871-9567
sberanek@corsarolaw.com
*Attorneys for Plaintiff Igor Stankic*

13

## JURY DEMAND

Plaintiff Igor Stankic hereby demands a trial by jury on all triable issues.

/s/  Steven B. Beranek

Steven B. Beranek, Esq. (#0066847)
*Attorney for Plaintiff Igor Stankic*