IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IGOR STANKIC, | CASE NO. 3:23-CV-00080-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OF OPINION AND ORDER** |
| CITY OF SANDUSKY, OHIO, BRETT J. BIRD, DANNY J. LEWIS, | |
| Defendants. | |

In this case before me pursuant to consent of the parties (*see* 28 U.S.C. § 636 and ECF # 20), Defendant City of Sandusky seeks dismissal of Plaintiff Igor Stankic's Second, Third, and Fourth causes of action. (ECF #12). For the reasons that follow, I **GRANT** the City's motion and dismiss the Second, Third, and Fourth causes of action.

FACTUAL BACKGROUND

Mr. Stankic is President of Stankic Holdings, Inc., an Ohio corporation that is the sole member of Stankic Enterprises, LLC, an Ohio limited liability company. (ECF #1 at PageID 2). The limited liability company owns a warehouse at 1722 Hayes Avenue in Sandusky, Ohio (the Hayes Property) that it uses as a shipping point for various customers. (*Id.*).

On the morning of October 12, 2022, Mr. Stankic noticed two tractor-trailers and a commercial pickup truck parked on the Hayes Property. (*Id.* at PageID 3). One truck blocked a driveway onto the property, while the other blocked a loading bay. (*Id.*). Mr. Stankic also observed that the locks securing the Campbell Street driveway entrance had been cut and the gate was open.

1

(*Id.*). Mr. Stankic contacted a representative from Hulcher, the name emblazoned on the commercial pickup truck, and demanded the trucks be moved immediately or he would have them impounded. (*Id.* at PageID 3-4). The Hulcher representative did not give Mr. Stankic any information about if or when the trucks would be moved. (*Id.* at PageID 4). Mr. Stankic then moved the tractor-trailer blocking the loading bay into his warehouse. (*Id.*). Eric Shiple, a Hulcher employee, arrived later that morning to move the vehicles. (*Id.*). Mr. Stankic demanded the vehicles be removed but required compensation from Hulcher before he would release the tractor-trailer stored in his warehouse. (*Id.*). The Hulcher representative left. (*Id.*).

While Mr. Stankic was on the phone with his attorney on an unrelated matter, Officers Bird and Lewis of the City of Sandusky Police Department entered the warehouse. (*Id.* at PageID 5). Mr. Stankic realized the officers must have spoken with the Hulcher representative, though this information was not communicated to him. (*Id.*). Mr. Stankic's attorney, aware of the situation, informed Mr. Stankic he would call right back with another member of the law firm. (*Id.*). Officer Lewis asked Mr. Stankic "What's going on?" and Mr. Stankic explained his attorney would be calling back shortly and would help sort out the situation. (*Id.*). The officers then attempted to handcuff Mr. Stankic and told him he was under arrest for theft. (*Id.* at PageID 6). Mr. Stankic struggled with the officers and eventually told them to stop pushing and he would let them arrest him. (*Id.*).

Once handcuffed, Mr. Stankic repeatedly asked to contact his attorney, but the officers refused. (*Id.*). The officers did allow Mr. Stankic to call an employee to come to the warehouse. (*Id.* at PageID 7). When Mr. Stankic demanded to know why he was being arrested, Officer Lewis said "I guess it will be unauthorized use of a motor vehicle." (*Id.*). The officers read Mr. Stankic his

2

*Miranda* rights, and after he refused to speak without his attorney present, the officers placed Mr. Stankic in the cruiser. (*Id.*).

Meanwhile, Mr. Stankic's attorney called back. (*Id.*). After Officer Lewis spoke with Mr. Stankic's attorney, the officer asked Mr. Stankic if Hulcher could have its truck back. (*Id.*). Mr. Stankic agreed, the handcuffs were removed, and Hulcher employees removed the vehicles from the Hayes Property. (*Id.* at PageID 7-8). Mr. Stankic refutes Officer Lewis' narrative in the police report, stating he never agreed to refrain from pressing charges against Hulcher for destruction of property and trespass. (*Id.* at PageID 8).

PROCEDURAL BACKGROUND

On January 17, 2023, Mr. Stankic filed suit against the City, Officers Lewis and Bird, and the Ohio Attorney General seeking damages for false arrest under 42 U.S.C. § 1983, false arrest under state law, and *respondeat superior* liability, and for a declaratory judgment finding Chapter 2744 of the Ohio Revised Code unconstitutional. (*Id.* at PageID 8-11).

The City moved to dismiss the Second, Third, and Fourth causes of action pursuant to Fed. R. Civ. P. 12(b)(6). (ECF #12). The City argues it has political subdivision immunity from the state law false arrest claim under Chapter 2744 of the Ohio Revised Code. (*Id.* at PageID 46). It also asserts that *respondeat superior* is not a viable theory of recovery under § 1983 or against a political subdivision. (*Id.* at PageID 51-52). Finally, the City argues that the constitutionality of Chapter 2744 is well-settled, and Mr. Stankic cannot show entitlement to a declaratory judgment that the statute is unconstitutional. (*Id.* at PageID 53).

3

## STANDARD OF REVIEW

In evaluating a Rule 12(b)(6) motion, courts "constru[e] the record in the light most favorable to the non-moving party," "accept[] as true all well-pleaded allegations in the complaint," and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland v. FCA US LLC*, 656 F. App'x 232, 236-37 (6th Cir. 2016).

When deciding an issue of state law, district courts apply the law of the state's highest court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Where a state's highest court has spoken to an issue, we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us." *Kirk v. Hanes Corp. of N.C.*, 16 F.3d 705, 707 (6th Cir. 1994). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (citation omitted). District courts are also bound to follow Sixth Circuit precedent, including the circuit's interpretation of Ohio law.

4

LAW AND ANALYSIS

**Second and Fourth Causes of Action (False Arrest and Declaratory Judgment Action)**

The City asserts it is shielded from liability for Mr. Stankic's state-law false arrest claim pursuant to Ohio's Political Subdivision Tort Liability Act. (ECF #12 at PageID 47). Under Ohio law, a political subdivision is "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Ohio Rev. Code § 2744.01(F). The parties agree the City is a political subdivision. (ECF #1 at PageID 2; ECF #12 at PageID 46).

Ohio courts apply a three-tiered analysis to determine whether a political subdivision is immune from tort liability. *Lambert v. Clancy*, 927 N.E.2d 585, 588 (Ohio 2010). The first tier of the analysis involves the general grant of immunity to political subdivisions under § 2744.02(A)(1), which states:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

The statute specifies that "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection" is a "governmental function." Ohio Rev. Code § 2744.01(C)(2)(a).

The second tier of the analysis focuses on whether any of the exceptions to political subdivision immunity listed in § 2744.02(B) apply. *Lambert*, 927 N.E.2d at 588. These exceptions include negligent operation of a motor vehicle, negligent performance of proprietary functions, negligent failure to maintain public roads, negligence on the grounds of a public building, and

5

liability that is expressly imposed by statute. Ohio Rev. Code §§ 2744.02(B)(1)-(5). If no exception applies, then the political subdivision is immune from suit. *See* Ohio Rev. Code § 2744.02(A)(1).

If an exception applies, the court proceeds to the third step to determine if any of the defenses in § 2744.03 apply to shield the political subdivision from liability. *Lambert,* , 927 N.E.2d at 588. A court need not address the defenses in § 2744.03 if none of the exceptions to immunity in § 2744.02(B) apply. *Ruffin v. Cuyahoga Cnty.*, No. 1:16 CV 640, 2016 WL 4543144, at *3 (N.D. Ohio Aug. 31, 2016) (citing *Rankin v. Cuyahoga Cnty Dept. of Child. & Fam. Servs.*, 118 Ohio St. 3d 392, 397 (2008) ("We need not go further in our immunity analysis, as R.C. 2744.02(A) prohibits the appellees' claim against the department, and there is no exception in R.C. 2744.02(B) that permits the claim to be resurrected.")).

Mr. Stankic does not claim that any exception in § 2744.02(B) applies; instead, he argues Chapter 2744 violates Article I, § 16 of the Ohio Constitution. (ECF #17 at PageID 75). That section of the Ohio Constitution states:

> All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law.

In 1982, the Supreme Court of Ohio abrogated the judicially created doctrine of sovereign immunity, holding that "[a] municipal corporation, unless immune by statute, is liable for its negligence in the performance or nonperformance of its acts." *Haverlack v. Portage Homes, Inc.*, 442 N.E.2d 749, 752 (Ohio 1982). In 1985, the Ohio General Assembly passed the Political Subdivision Tort Liability Act, granting statutory immunity to political subdivisions. *See Butler v. Jordan*, 750 N.E.2d 554, 572 (2001) (Cook, J., concurring). Mr. Stankic argues that the statute, "to the extent it purports to grant immunity to political subdivisions for the conduct of its police

6

officers when fulfilling the state's obligation, plainly contradicts the clear text and meaning of Article One, § 16 of the Ohio Constitution[.]" (ECF #17 at PageID 75).

The Sixth Circuit addressed the constitutionality of the statute in *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690 (6th Cir. 2006), stating as follows:

> No majority decision of the Supreme Court of Ohio has ever held the Liability Act unconstitutional. On the contrary, the law of the supreme court remains that the statute is constitutional. In *Fabrey v. McDonald Village Police Department*, the supreme court held that the Liability Act does not violate the equal protection; due process; or article I, section 16, right to remedy provisions of the Ohio constitution.
>
> The supreme court's dicta in *Butler v. Jordan* did not work a change because it was pronounced by a plurality of the court. In *Butler*, the supreme court held that an Ohio statute did not expressly impose liability for negligence or recklessness in the inspection and certification of certain day-care facilities, and the defendant was therefore immune under the Liability Act. Nevertheless, a plurality of three of the seven justices went on to question the constitutionality of the Liability Act. In the plurality's opinion, there was a serious question whether the Liability Act violated the right to trial by jury guaranteed by article I, section 5, of the Ohio constitution because citizens of Ohio had the right to demand a jury trial in negligence actions at the time the Ohio constitution was adopted. The plurality also appeared to suggest that the Act violated the right to remedy under section 16. The plurality nonetheless voted to apply the law whose constitutionality it questioned.
>
> The plurality dicta does not represent the view of the majority of the Supreme Court of Ohio and was not even applied by the plurality in that case, and thus it cannot be said that it represents Ohio law. Because "the state's highest court has not decided the applicable law, then [this] court must ascertain the state law from 'all relevant data,'" including the state's intermediate court decisions.
>
> Every decision of the Court of Appeals of Ohio that has entertained challenges to the Liability Act has found the statute constitutional. If "the only precedent is from the state's intermediate appellate courts, the intermediate court's decision should be followed absent a strong showing that the state supreme court would act in a different manner." Because a majority of the supreme court has never held that the Liability Act is unconstitutional, there has been no showing that the supreme court would act differently from the courts of appeals. Therefore, we read Ohio's law in its current state to provide that the Liability Act is constitutional.

*Id.* at 697-98 (citations omitted).

7

Later, the Supreme Court of Ohio addressed another constitutional challenge to the immunity statute, stating simply: "In reviewing our precedent and that of numerous appellate courts, we conclude that this issue is settled and need not be discussed any further in this case." *O'Toole v. Denihan*, 889 N.E.2d 505, 520 (Ohio 2008) (citation omitted).

Further, Ohio appellate courts routinely reject constitutional arguments aimed at the statute. *See, e.g.*, *Pesta v. City of Parma*, No. 94395, 2010 WL 3931125, at *3 (Ohio. Ct. App. Oct. 7, 2010), *appeal not allowed*, 943 N.E.2d 574 (Ohio 2011) (table); *Doe v. Jackson Loc. Sch. Dist.*, No. 2006CA00212, 2007 WL 1840864, at *5 (Ohio Ct. App. June 26, 2007), *appeal not allowed*, 876 N.E.2d 969 (Ohio 2007) (table); *Bundy v. Five Rivers Metroparks*, 787 N.E.2d 1279, 1288 (Ohio. Ct. App. Apr. 4, 2003); *Eischen v. Stark Cnty. Bd. of Comm'rs*, No. 2002CA00090, 2002 WL 31831395, at *3 (Ohio Ct. App. Dec. 16, 2002), *appeal not allowed*, 786 N.E.2d 901 (2003) (table).

This Court is bound by the state courts' interpretation of its statute and the universal rejection of its unconstitutionality, and by the Sixth Circuit's decision in "*Ellis v. Cleveland Municipal School Dist.*, 455 F.3d 690 (6th Cir. 2006), which affirmed a district court's holding that . . . the statute had never been ruled unconstitutional by the Supreme Court of Ohio and had been unanimously upheld by every intermediate appellate court." *See Y.S. v. Board of Educ. of Mathews Loc. Sch. Dist.*, 766 F. Supp. 2d 839, 843 (N.D. Ohio Feb. 7, 2011) (footnote omitted). Here, the broad grant of immunity under Ohio Rev. Code § 2744.02(A)(1) shields the City from liability for Mr. Stankic's intentional tort claim for false arrest. *See Carrasquillo v. City of Cleveland*, No. 1:10-CV-219, 2010 WL 3893616, at *3 (N.D. Ohio Sept. 27, 2010); *Krantz v. City of Toledo Police Dept.*, 365 F. Supp. 2d 832, 836 (N.D. Ohio Apr. 15, 2005); *see also Griffits v. Newburgh Hts.*, No. 91428, 2009 WL 280376, at *3 (Ohio Ct. App. Feb. 5, 2009) (collecting cases generally holding that

because § 2744.02(B) includes no specific exceptions for intentional torts, political subdivisions are immune from intentional tort claims).

Because the City is immune from liability for intentional torts under Ohio Rev. Code § 2744.02(A)(1) and none of the exceptions under § 2744.02(B) apply, Mr. Stankic cannot show he is entitled to pursue a claim against the City for false arrest under Ohio law. I therefore **GRANT** the City's request to dismiss the false arrest claim asserted in Mr. Stankic's Second Cause of Action. Furthermore, having found no controlling authority or persuasive support for the contention that Ohio Rev. Code §§ 2744.01, *et seq.* violate the Ohio Constitution, I **GRANT** the City's request to dismiss Mr. Stankic's declaratory judgment claim in the Fourth Cause of Action.

**Third Cause of Action (*Respondeat Superior* Liability)**

The City next argues that *respondeat superior* is not a viable theory of recovery under 42 U.S.C. § 1983 or against political subdivisions under Ohio law. (ECF #12 at PageID 51-52). I agree.

In *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the United States Supreme Court held that an institution may not be sued for injuries inflicted solely by its employees or agents under § 1983. The holding is well established and routinely applied in the Sixth Circuit. *See Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*."). "A plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing where its

official policy or custom actually serves to deprive the plaintiff of his constitutional rights." *Gregory*, 444 F.3d at 752 (citing *Monell*, 436 U.S. at 692-94).

Ohio appellate courts have rejected attempts by plaintiffs to attach liability to a political subdivision for state intentional tort claims under *respondeat superior* explicitly because the political subdivision was immune from such claims and no exception existed under Ohio Rev. Code § 2744.02(B) to find otherwise. *See, e.g.*, *Lee v. Cleveland*, 784 N.E.2d 1218, 1222 (Ohio Ct. App. Feb. 20, 2003), *appeal not allowed*, 791 N.E.2d 983 (2003) (table); *Reno v. Centerville*, No. 20078, 2004 WL 316512, at *9 (Ohio Ct. App. Feb. 20, 2004). Federal courts applying Ohio law have reached the same conclusion. *T.W. v. Finneytown Local School Dist.*, No. 1:18-CV-668, 2019 WL 4928894, at *4 (S.D. Ohio Oct. 7, 2019); *Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 812 (S.D. Ohio Sept. 21, 2018).

Mr. Stankic's claim that the City is liable for the police officers' alleged false arrest under *respondeat superior* must be dismissed because *respondeat superior* is not viable under § 1983. Moreover, no exception under Ohio Rev. Code § 2744.02(B) applies to his claim and, accordingly, Ohio Rev. Code § 2744.02(A)(1) immunizes the City in this regard. As a matter of law, Mr. Stankic cannot show that the City is potentially liable to him under the theory of *respondeat superior*. As such, I **GRANT** the City's motion to dismiss Mr. Stankic's third cause of action.

### Conclusion and Order

For the foregoing reasons, I **GRANT** the City of Sandusky's Motion to Dismiss the Second, Third, and Fourth Causes of Action of Mr. Stankic's Complaint. Mr. Stankic's claims against the individual officers remain intact, as does his § 1983 claim in Count 1 directed at the City.

I will hold a Case Management Conference by telephone with counsel only on **Tuesday, August 15, 2023 at 11:00 a.m.** Counsel are to call the Court's bridge line at (866) 390-1828, passcode 5390723. Further, counsel are directed to file a Report of Parties' Planning Meeting no later than **Tuesday, August 8, 2023**.

Dated: July 19, 2023

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE